IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TROY CLANTON, ROSE RABON, | ) | |
| and SOUTH START SERVICES, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-717-M |
| | ) | |
| CHRIS BROGDON, | ) | |
| CONNIE BROGDON, | ) | |
| KENMETAL, LLC, | ) | |
| SENIOR NH, LLC, | ) | |
| BAN NH, LLC, | ) | |
| LIVING CENTER, LLC, | ) | |
| OAK LAKE, LLC, | ) | |
| ADCARE OKLAHOMA | ) | |
| MANAGEMENT, LLC, | ) | |
| ADCARE HEALTH SYSTEMS, INC., | ) | |
| and BOYD GENTRY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants Chris Brogdon ("Mr. Brogdon"), Connie Brogdon ("Mrs. Brogdon"), Kenmetal, LLC, Senior NH, LLC, Ban NH, LLC, Living Center, LLC, and Oak Lake, LLC's (the "Brogdon entities") (collectively "Defendants") Motion to Dismiss Count 5 of Plaintiffs' Amended Complaint[1] as Alleged Against These Defendants and Brief in Support, filed April 4, 2014. On April 25, 2014, plaintiffs responded, and on May 2, 2014, Defendants replied. Based on the parties' submissions, the Court makes its determination.

---

[1] On April 18, 2014, the Court granted plaintiffs leave to file a Second Amended Complaint to correct a defendant party name. Defendants' responsive pleadings, including their motion to dismiss currently before the Court, were unaffected. While Defendants refer to plaintiffs' Amended Complaint in their motion to dismiss, in this Order, the Court will be referring and citing to plaintiffs' Second Amended Complaint [docket no. 41].

I.   Background[2]

Plaintiffs allege that on around July 4, 2009, Mr. Brogdon proposed an agreement between himself and plaintiff Troy Clanton ("Clanton"). Mr. Brogdon solicited Clanton and plaintiff Rose Rabon ("Rabon") to assist him in locating and purchasing nursing homes in Oklahoma. In return for Clanton and Rabon's assistance, Mr. Brogdon agreed to give plaintiff South Start Services, Inc.[3] ("SSSI") the management contracts for the homes. Plaintiffs allege that Mr. Brogdon made it clear that he intended to purchase the nursing homes personally and not for defendant Adcare Health Systems, Inc. ("Adcare Inc").[4]

Clanton and Rabon located two portfolios of homes, each consisting of five nursing homes, which were known as the Blue Dolphin portfolio and the Harty portfolio. Clanton and Rabon also located two independent nursing homes, Quail Creek and Companion Specialized Health Care. Brogdon acquired the Blue Dolphin portfolio through the Brogdon entities, five newly formed LLCs[5]. Clanton and Rabon completed the Certificate of Need Applications[6] ("CON") for the Blue Dolphin homes, which contained a management agreement between each Brogdon entity and SSSI stating that SSSI would manage the nursing facility. Plaintiffs also allege they assisted Brogdon with getting financing for the Blue Dolphin portfolio and assisted

---

[2] The alleged facts are taken from plaintiffs' Second Amended Complaint.

[3] Clanton and Rabon formed SSSI in August of 2007 for the purpose of soliciting management contracts to operate nursing homes.

[4] At the time of the events in this action, Brogdon was an equity holder in Adcare Inc. and served as Adcare Inc.'s Chief Acquisition Officer for the acquisition of nursing homes. He also owned a number of nursing homes personally or through entities controlled by him.

[5] The Brogdon entities were owned by Mrs. Brogdon.

[6] A Certificate of Need Application is a regulatory application through the Oklahoma Department of Health, which was required to transfer the nursing homes.

with the purchase of the Harty portfolio. Plaintiffs further allege that in reliance on Brogdon's agreement that SSSI would be managing the acquired nursing facilities, plaintiffs engaged in a variety of activities, in addition to acquiring the CON for the Blue Dolphin portfolio, which included: "locating the [nursing] homes, touring various [nursing] homes, negotiating starting sales prices, and assisting with acquiring financing." Second Am. Compl. ¶35. Plaintiffs also allege they incurred significant expenses in assisting Mr. Brogdon with acquiring the nursing homes.

On or about July 13, 2011, plaintiffs allege that Mr. Brogdon notified plaintiffs that he would not be honoring the management contracts with SSSI and that Adcare Inc. would be purchasing the nursing homes. Further, plaintiffs allege that on July 28, 2011, defendant Adcare Oklahoma Management, LLC, a Georgia limited liability company, was registered with the Oklahoma Secretary of State, and on July 29, 2011, when licenses for the Blue Dolphin homes were issued, Adcare Oklahoma Management LLC began managing the Blue Dolphin homes. Plaintiffs allege that Mr. Brogdon needed plaintiffs' expertise in obtaining the CONs on the Blue Dolphin nursing homes and that Defendants knew the nursing homes would ultimately be owned and managed by Adcare entities, not SSSI.

Plaintiffs also allege that defendant Boyd Gentry ("Gentry"), CEO of Adcare Inc., became aware of Mr. Brogdon's alleged intention to acquire the nursing homes for Adcare Inc. and to replace SSSI with an Adcare management company. Further, plaintiffs allege that Gentry assisted in "shifting all of the purchases to Adcare [Inc.], in breaching the management agreements with SSSI and transferring them to Adcare-owned entity, Adcare Oklahoma Management, LLC." Second Am. Compl. ¶52.

Defendants now move, pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), to dismiss count 5 of plaintiffs' Second Amended Complaint. Specifically, Defendants request this Court dismiss plaintiffs' fraud claim because plaintiffs have failed to plead fraud with the requisite particularity.

II.     Standard of Dismissal

Regarding the standard for determining whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. at 678 (internal quotations and citations omitted). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Finally, "[a] court

reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

Further, Rule 9(b) provides, in pertinent part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud . . . and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (internal quotations and citations omitted). Additionally,

> Rule 9(b) does not . . . require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means . . . that individual plaintiffs should identify particular defendants with whom they dealt directly . . . ; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them - and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them – and how.

*Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986).

III.  Discussion

    A.  Rule 9(b)

Defendants assert that plaintiffs have failed to plead their fraud claim against Mrs. Brogdon and the Brogdon entities with the requisite particularity required by Rule 9(b). Specifically as to Mrs. Brogdon, Defendants rely on this Court's decision in *Lee v. Enter. Fin. Grp.*, No. CIV-08-1221-M, 2009 WL 1362605, (W.D. Okla. May 14, 2009) (unpublished), in

5

which the Court found "that plaintiffs had impermissibly lumped all defendants together, rather than setting forth the identity of the party making the fraudulent statements, …" *Id.* at *4. Defendants contend that plaintiffs' fraud claim against Mrs. Brogdon should be dismissed because plaintiffs have failed "to attribute any particular statements to Mrs. Brogdon, alleging instead only that she participated in some unspecified fashion in a meeting in which certain promises were made to plaintiffs." Def. Mot. to Dis. at 7. As to the Brogdon entities, Defendants contend that plaintiffs failed to particularly allege fraud claims against these entities, which did not exist at the time the alleged fraudulent statements were made. Plaintiffs contend that the alleged misrepresentations made to plaintiffs were continued and perpetuated by Mrs. Brogdon and the Brogdon entities, which she owned.

Having carefully reviewed plaintiffs' Second Amended Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs' fraud claim against Mrs. Brogdon and the Brogdon entities satisfies Rule 9(b)'s particularity requirements. Specifically, the Court finds plaintiffs' Second Amended Complaint contains the who, what, when, where, and how necessary to establish a claim a fraud. As to Mrs. Brogdon and the Brogdon entities, plaintiffs specifically allege that:

> 63. Connie Brogdon was a participant in the initial meeting at which Plaintiffs were promised the management contracts in return for their work in locating the homes and assisting in the transactions.
>
> 64. Connie Brogdon owns the companies that later executed contracts with the Plaintiffs, which neither the Brogdons, nor their companies intended to honor.
>
> 65. Despite the executed agreements with Plaintiffs, Connie Brogdon's companies then hired Adcare to manage the homes in the place of Plaintiffs.

Sec. Amend. Compl. ¶¶ 63 – 65. Having reviewed the above alleged facts, along with the Second Amended Complaint in total, the Court finds plaintiffs have stated with particularity the circumstances constituting the fraud or mistake. Plaintiffs allege Mrs. Brogdon participated in the meeting in which plaintiffs were promised management contracts in exchange for their work. Mrs. Brogdon owned the Brogdon entities formed to acquire the nursing homes in the Blue Dolphin portfolio. For each Brogdon entity, Clanton and Rabon prepared the CON which contained a management agreement between the respective Brogdon entity and SSSI, stating that SSSI would manage the nursing home. Plaintiffs allege they relied on the representations made in the management contracts and, as a result, expended significant amounts of time and money to assist with acquiring the nursing homes in the Blue Dolphin portfolio. Once the CON applications had been approved, plaintiffs were told they would not be managing the Blue Dolphin nursing homes, and instead Mrs. Brogdon hired Adcare Oklahoma Management LLC, a company which was owned by Adcare Inc. Plaintiffs further allege this action was contrary to the initial statements represented to plaintiffs that Adcare Inc. would not be involved in the acquisition of the nursing facilities. Therefore, the Court finds that plaintiffs' fraud claim against Mrs. Brogdon and the Brogdon entities should not be dismissed pursuant to Rule 9(b).

    B.    Rule 12(b)(6)

Defendants also contend that plaintiffs have failed to allege a plausible claim of fraud against Defendants. Specifically, Defendants assert that plaintiffs failed to sufficiently allege that Defendants did not intend to honor the offer made to plaintiffs at the time the offer was made and, therefore plaintiffs' fraud claim should be dismissed. Plaintiffs contend that they have sufficiently pled a plausible fraud claim against Defendants, and specifically Mr. Brogdon. Plaintiffs assert that Mr. Brogdon "made false representations to Plaintiffs, he knew they were

false when he made them, he intended Plaintiffs to rely on them and Plaintiffs relied on them to their detriment." Plfs.' Resp. at 6 (citing *Silk v. Phillips Petroleum Co.*, 760 P.2d 174, 176-177 (Okla. 1988)).

Having carefully reviewed plaintiffs' Second Amended Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs have sufficiently pled a plausible claim of fraud against Defendants. In their Second Amended Complaint, plaintiffs allege a factual scenario that demonstrates that Mr. Brogdon represented to plaintiffs that in exchange for their assistance in locating nursing homes for Mr. Brogdon to buy personally, he would agree to give SSSI management contracts for the nursing homes. Plaintiffs further allege that in reliance on Mr. Brogdon's statements, plaintiffs incurred significant expense locating twelve nursing homes and assisting with the acquisition of the nursing facilities, which, among other things, included completing CON applications for five of the facilities within the Blue Dolphin portfolio. Contained in the CON applications for the Blue Dolphin facilities were management agreements between each nursing facility and SSSI. Subsequent to the CON applications being approved for the Blue Dolphin facilities, Mr. Brogdon informed plaintiffs that he would not be honoring the management contracts. Plaintiffs further allege:

> 39. Brogdon never intended to honor the representations he made to Plaintiffs and that he had a pre-meditated scheme in place because on the same day he informed Plaintiff that Adcare would be involved in the deal, Adcare Oklahoma Management LLC was formed as a Georgia Limited Liability Company. On July 28, 2011, Adcare Oklahoma Management LLC was registered with the Oklahoma Secretary of State as a foreign limited liability company. On July 29, 2011, the licenses for the Blue Dolphin homes were issued. That day, July 29, 2011, Adcare Oklahoma Management, LLC began managing the Blue Dolphin

homes. Adcare Oklahoma Management, LLC is 100% owned by Adcare Health Systems, Inc.

Sec. Amend. Compl. ¶ 39. Accordingly, at this stage of the litigation, the Court finds that plaintiffs' alleged factual content is sufficient for this Court to draw the reasonable inference that Defendants knowingly made false representations on which plaintiffs relied to their detriment. Therefore, plaintiffs' fraud claim should not be dismissed.

IV.   Conclusion

Accordingly, for the reasons set forth above, the Court DENIES Defendants Chris Brogdon, Connie Brogdon, Kenmetal, LLC, Senior NH, LLC, Ban NH, LLC, Living Center, LLC, and Oak Lake, LLC's Motion to Dismiss Count 5 of Plaintiffs' Amended Complaint as Alleged Against These Defendants and Brief in Support [docket no. 33].

**IT IS SO ORDERED this 21st day of November, 2014.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE